May it please the Court, my name is Loren Kiva. I represent the appellant, Silgan Containers Corporation. Your Honor, I'm sure you've read the briefs and you know what the facts are in this case. This is a fruit cup. Yes, I remember them well. I'm not going to try and open it because I don't know whether I could open it. I just thought I would bring it to show the Court. Yes. It might be awkward. The one thing I've learned in court is you don't do experiments that you can't control, and I have no control over that one. Nor did Silgan, nor did Del Monte. What if you can open it? Excuse me, Your Honor? What if you try and you can open it for her, would that leave you? With some fruit, I suspect. There were two fundamental flaws in the lower court's decision, both as a matter of undisputed fact. The district court thought that the product was not inherently dangerous. In their opposition brief, National Union argues at page 41 that because there is no evidence any container was actually – excuse me, any customer was actually injured while attempting to open the fruit cups, the fruit cups were not inherently dangerous. The record is to the contrary. In one month alone, in July of physical year 05, Del Monte received a host of complaints, including the following. Three cans had tabs that broke. Cut thumb on lid. While pulling the tab, I almost cut my finger. The tabs are breaking off and I don't like the sharp edges around the tin. Too hard to open these cans and the lids are too sharp. In the record and in our brief, we have a picture of a can that shows the jagged edges. So the fact that the lower court just made a fundamental error of fact that these cans were not inherently dangerous. The second fundamental error of fact that the district court made was that Del Monte could repackage the fruit. The record is undisputed, Your Honor, and, in fact, National Union stipulated to the following. Silgan believes that it would have been impracticable to remove the fruit from the fruit in new, non-defective cans because this would require a second retort heating process of approximately 15 minutes at 235 degrees Fahrenheit that would cause significant deterioration and result in a product with a consistency and texture not meeting consumer expectations and make the fruit commercially unacceptable. So those are the two fundamental issues of fact that I think the district court made. Roberts. Ginsburg. And to what extent is the first issue, that is, whether they're the cans were inherently dangerous, to what extent does that turn on a question? Excuse me, Your Honor? To what extent does that the question of inherently the inherent dangerousness? Yes. To what extent does that turn on a question of fact as opposed to interpreting the policy provision? Because the courts have held, and this goes to the fundamental error of law that the district court made, the courts have held, and if you take a look at the cases that did, in fact, involve national union, Terra Industries for one and Shade Foods for another, that wasn't national union, but the California courts and the courts across the country have held that where you have a product, a food product, that is inherently dangerous, there is been tangible injury to physical property within the meaning of the cases. And if you take a look at the F&H construction case, which has nothing to do with this case at all, because what happened in that case, you had a construction site, the subcontractor installed some piles. They had caps on top of the piles that were plainly defective because they didn't meet the standards specified for the particular piles. When they found out about this, they were about three-quarters' way through, and they simply solved the problem by soldering new material onto the pile tops, making them comply with the contract specifications. So what you had in that situation was, one, not property damage. You simply had a defective product that was injured in itself rather than injuring something else. And so what you have in these cases is a clear line of authority, whether you take the PepsiCo case out of the New York court of appeals, whether you take Shade Foods, you take Terra Industries, that, as the Court said, in Shade Foods, we see no difficulty in finding property damage where a potentially injurious material in a product  And you can take a look at the can. Del Monte's product was a fruit cup can. It incorporated a defective top, and therefore you have property damage within the clear meaning of all the policies that we've looked at. So we have that going forward. Now, let us take a look, if we can, at the exceptions or the exclusions within the policy. Exclusion E is property damage to impaired property or property that has not been physically injured, arising out of a defect, deficiency, inadequacy, or dangerous condition in your product. As we've demonstrated in our brief, that does not apply, because, first of all, there is no impaired property. Impaired property means property that has a defect, but that it can be restored to use if the product can be restored to use. That is impaired property. There is no way, physically, that this product can be restored to use. The National Union stipulated to that. Second of all, property that has not been physically injured. Well, the courts have held that in a situation like this where you have an integration of a product that is the – that makes another product dangerous, there has been property damage. So why isn't the property just the fruit? I mean, that's what Del Marty – you buy that – you buy, you know, the little containers to eat the fruit, not the can. The product is, in fact, the can and the fruit. I didn't – you know, I don't – you buy that mini-container there, and you buy it to eat the fruit, not to eat the can. But the – it's like driving a car. You go from point A to point B in the car, but the mechanism by which you do that is the car. The mechanism by which you get the fruit is the can. And so the product is, in fact, and this goes to the other product recall matter, the product is, in fact, Del Marty's fruit cup can. You don't buy a Silvan can when you walk into a Safeway. You buy a Del Marty fruit cup can. And that's – Well, you buy a cup of fruit that's eatable on the go. That would be a different case. Pop the top and phew. Or not, if you can't get to it. Yeah. Well. I think that if you take a look at all the cases that are cited, they talk about the insured's product being a part of the other product. And as a matter of law, I believe, Your Honor, the product is Del Marty's. You know, the cases that when they talked about – going back to the minute for the inherently dangerousness, you know, like the asbestos, which is – can be embedded in pipe and other kinds of material. Isn't that different than this? Absolutely not, Your Honor. If you – Terra Industries v. National Union, you have a benzene product that contaminates a soda product itself as a result of canning or packaging or bottling or whatever. And you have the same situation in the Winter Turb v. PepsiCo case by the New York Court of Appeals. Actually, there was no danger to the consumer, and they didn't have a recall. But the Court said that because the product, the insured's product, contaminated the other product where you had an integration of the two, then there was property damage to the product. As I say, when you go into a supermarket, you don't just buy fruit cups or fruit. I mean, you buy the entire product, which includes the method by which it's given to the consumer. So let me then go to the exclusions, if I can. What's the best case that supports that statement? What case would you want me to look at that says that you don't support that case? I would start with – give me two seconds. Because if you do, you'll see that I'm right. Shade Foods. Which one? Shade Foods. Shade Foods. California Court of Appeals. Yes. Okay. I got it. Which other one? Terra Industries. Eighth Circuit, 2003. Semtec Court v. Royal Insurance Company of America. It's not reported in F-Second, but it's a decision by the Central District of California, Judge Fees, I believe. Are the policy exclusions different in those cases? Some of them are, but not materially. If you take a look at all the policy exclusions where the courts have looked at this, they've said essentially – and let me get back to those. And do any of the three that you've cited contain – are they against national union and the same policy, essentially? Terra Industries is. And it interprets the very like policy? I would say almost identical policy. Very good. And, you know, this is called a comprehensive general liability policy. They are uniform across the United States. In fact, they're uniform across the world. Basic policy applies in Australia. I've had cases down there. Canada and the same. And the courts apply the same principles across the board. I've got another case that I think I could cite to you from Canada that has the same holding. So, Your Honor, the answer to the question is the language is essentially the same. There is one difference, if I could point that out. And this goes to a slightly separate issue, and that's how you do the excess coverage over the underlying coverage. Now, national – what is also interesting about this case is the primary coverage carrier, Zurich, paid the full limit of its policy limits. It didn't contest coverage. The terms are essentially the same. And then national union comes in and says, well, we want to revisit this. And another interesting, really, part about this case is that the Zurich policy includes the cost of the cans. There's a specific provision in there that says the cost of the cans are included in our coverage. National union's policy excludes the cost of the cans. And our view is that because the underlying Zurich policy covered them, the policy limit attaches above the cost of the cans. And national union argues that, well, if you take a look at a case called access surplus, that supports the proposition that you've got to delete the cost of the cans before national union's policy comes into play. But there's a fundamental difference in the policy. In the access policy, it provided that, quote, only losses which except for the amount hereof or thereof would have been payable under this policy contribute to the satisfaction reduction or exhaustion of underlying limits or deductibles. That language is not in the national union policy. And so the normal practice is you take a look at where the policy is, the underlying policy has been met, its expectations have been satisfied, the amount has been paid, and that's when the policy attaches. So in answer to your question, Your Honor, that is the one fundamental difference in this case. There are also some fundamental differences in terms of the product recall exception, which we've noted. The Blue Isle case, which shouldn't have been cited to this Court in the first place because it's a non-presidential opinion, but it's in there. And we've distinguished that on four separate grounds. First of all, the product recall itself only applies to the recall of the insurance product, which would have been the cans. The product here is a Del Monte product, and the courts have uniformly held across  the board that the can is a non-presidential opinion. And so the question is, can we use that to get the property that's been damaged? At this point, Your Honor, I would like to reserve the rest of my time. Thank you. Silgan has really sort of glossed over the whole analysis under the insuring agreement of whether there's property damage and really jumped right to damages. So I'd like to take a step back and talk about the analysis of property damage. Now, in Silgan's brief, they've really conflated the two definitions of property damage. Under the first prong, it's physical injury to tangible property, that you need a physical injury. And that includes all resulting loss of use of the property. Now, if you don't have physical injury, then you can go under the second prong, which is loss of use of tangible property that is not physically injured. So these are two mutually exclusive definitions. Either you have physical injury or you don't. But you can't have both those circumstances going on at the same time. Now, all this claim really involves is faulty workmanship. That's basically it. Silgan made a defective pop-top. It didn't work as intended. That's really the only injury we have going on here. And that's simply something that's an ordinary business risk that CGL policies simply do not cover. I mean, if they did, then the liability insurer would essentially be transformed into a warrantor of the insurer's goods and services. And that's not the function of a CGL policy. He says that the injury is to the product, and the product is the whole package. Well, no, it's not, because it's undisputed, as even Silgan admits, that our policy is never going to cover the cans themselves. I mean, that's just never going to be covered under our policy. Indeed, the underlying policy covers that. The underlying policy did cover the cans. Our policy was narrower. We didn't cover it. That's undisputed. So the focus here is the fruit. So we're looking at just the fruit. Now, let's look under the first prong of the insurer. Is that fair to do? I mean, yes, that's you have the can and you have the fruit, but isn't the fruit unusable if you can't get into the can safely? Well, if we're talking about loss-of-use property damage, but that's not the case. I mean, remember, this is a defect merely of convenience. I mean, it's a pop top. It's designed to allow you to open the can just using your hands. The normal way you would use it is you would open it with a can opener. I mean, it's just a little bit harder to open. So the pop doesn't work, you take a can opener to it. You can open it. I mean, and even Silgon admitted in their brief, yes, the fruit could have been physically extracted from the cans. It's not like it's totally inaccessible. And another point that is undisputed is that the fruit itself is perfectly fine. The defect had no effect on the fruit itself. It's edible. It wasn't contaminated in any way. The shelf life was unaffected. I mean, the fruit is fine to eat. So those two circumstances combined together. And you know that because somebody from National Union ate it or what? Silgon stipulated to it. It's undisputed. So there's no question about that. So with those two circumstances combined, the fruit is usable. Now, it might not be usable in the way that it was originally intended. It couldn't be sold on the primary market, meaning, you know, in the supermarkets as Del Monte had intended to sell it. But that's not the focus for loss-of-use property damage. It's does the fruit have any use? Maybe it's not the primary use, but does it have any use? And here it did because you could get to the fruit and the fruit was fine. Somebody could have eaten it. I mean, we made the point in our brief that these could have been sold to nursing homes, schools, the military, other sort of institutions where the fruit could have been, you know, the cans could have been manually opened and the fruit dumped and served in sort of bulk form. So that is a use. Family style. Family style, exactly. And remember that this isn't our burden to show that there is some use remaining in the product. I mean, loss-of-use is the definition of property damage which appears in the insuring agreement. That's Silgon's burden to show that there's loss-of-use. And they presented nothing. They simply take issue with our evidence that there's salvage value for the fruit, but that doesn't establish their burden in the first instance. So now I'd like to talk a little bit about physical injury under the first part of the definition, the physical injury to tangible property. Now, because it's undisputed that the fruit was fine, I mean, Silgon basically concedes they can't show physical injury to the fruit. Well, they go beyond that. Physical injury to the product. The product is the whole package, which is the can. So even if you go beyond that, even if you go beyond that and say, well, let's look at the can and the fruit as a unit. Now, where they're really going with this is the incorporation doctrine. So under the incorporation doctrine, this is a narrow exception to the general rule that the mere incorporation of the insured's defective product into a hole does not damage the hole unless it injures some other component of the unit. So that's why. Or becomes unsalable as intended. Well, no, that's not the standard. I mean, the standard is, I mean, it's an exception. It's a legal fiction, really, that says we're going to deem there to be physical injury immediately upon incorporation. So the mere fact of incorporation, that means there's been physical injury. So in those circumstances, cases that have found the incorporation doctrine applies, it's been in a very unique set of facts, like asbestos. Asbestos is ultra-hazardous. I mean, if you put asbestos-containing materials in a building, courts have found that under the incorporation doctrine, the building has been immediately damaged because of the danger of release of asbestos fibers. Now, specifically in the food context, we're talking about contaminants. So if the insured product is mixed in with some other product, then and that it can't be extracted, such that they're combined together, then the courts have deemed that to be physical injury. If it were wrapped in a, contained in an edible outer covering. If the can were edible? Well, I mean, like it could be chocolate or something. Well, it wouldn't be quite as mixed. I mean, the cases where the courts have found incorporation, it's been really more mixed together. So, for example, like a carcinogenic-laced carbon dioxide in carbonated beverages or, you know, bad noodles mixed in with a soup or bad nut clusters mixed in with a cereal. That's harder to separate out. Certainly that would present a closer case. But in this case, I mean, we don't have it. The can is not mixed with the fruit. The fruit is contained within the can. So you just remove the can. Boom, it's fine. So that's how the incorporation doctrine does not apply. Now, Silligan really relies on, well, there were jagged edges and that was an inherent danger. Come on. That is not on the order of asbestos. Jagged can edges are not on the order of asbestos or benzene, which is a carcinogen. And, you know, the fact is, is that even a properly manufactured pop-top can is a danger. You can cut your thumb even when you pop it off the right way. The point is, it's not an unreasonable danger. How about the exclusions? What if we were to conclude that there was damage? Well, it would depend on what kind of property damage you found. If you found that there is loss-of-use property damage, then you would go to exclusion E. That doesn't apply under the first prong, physical injury. It only applies under the second prong. And Silligan seemed to be really confused about this point in our brief, so I'd like to set it out pretty clearly here, is that the exclusion applies, it says, you know, it applies to impaired property or property that is not physically injured. So that's a disjunctive. They keep saying, well, it's not impaired property. We've never said it was. We've never relied on impaired property. I don't know why they're arguing that. It's disjunctive. Or property not physically injured. That's what we're focused on here. So if you have property that's not physically injured, it's just loss-of-use, then the exclusion E says, well, we're not going to cover that damage if that damage arose from the insured's basically their faulty workmanship or their breach of contract. And that's what happens here. If you find that there's loss-of-use property damage, the only circumstance that, the only way that got to be is because Silligan manufactured a defective and, in the course of doing so, breached its contract with Del Monte. There's no other circumstance giving rise to that defect. And Silligan has no answer why the exclusion wouldn't apply. They're not relying on the exception. They're not saying that there's sudden and accidental exceptions to the exclusion applies. Basically, this exclusion is another iteration of the your product exclusion. It's just, you know, reiterating the theme that CGL policies do not cover faulty workmanship claims. How much did Sylvan pay National Union in premium for this coverage, this umbrella coverage? You know, I'm not sure off the top of my head, but the policies declaration page says that the minimum premium is $650,000. I'm not exactly sure what, over what time period that is, if that's for everything. But, yes, they paid a premium. Were they able to negotiate any of the terms of the contract, or is it pretty much the same policy across the country? You know, I'm not personally familiar with how the contract came to be. That evidence really isn't in the record. But, yes, I mean, this is pretty much a standard CGL form. So these are standard. But the standard is that these type of policies just don't cover faulty workmanship. I mean, when you have faulty workmanship, there is going to be an injury in the sense of economic damage. If you make a bad product, it's not going to be, there's going to be some economic impact. But the point is, it's not property damage. I mean, property damage has to be a physical injury. And that's not the same as an economic injury. I mean, in some circumstances, the policy might cover economic injury if it flows from or is a consequence of covered property damage. But economic injury... Like the loss of use? Well, that is not, I mean, that's loss of use is a different type of property damage. So it's, you have to show first that there is loss of use and then the damages flowing from that, you know, might be covered. As opposed to just a choice not to go forward with that product in the marketplace because that's apparently what's happened here, correct? Right. If I understand what you're saying, Del Monte's decision that it didn't want to sell the product. Right. Correct. That's not going to be dispositive on the coverage issue because that really only goes to, well, what happened between Del Monte and Silligan under their supply agreement. That's a totally different issue of whether, you know, National Union is liable for property damage coverage under the policy to Silligan. I mean, Silligan says, well, we were legally obligated to pay these damages under their supply agreement. And yes, that's true. But the policy here says it's not just legally obligated to pay. It's legally obligated to pay liability because of property damage. It doesn't say because of breach of contract. And so for all those reasons, Silligan has to be. Now, what about the other two exclusions that were? The product recall and the your product exclusions. It seems to be undisputed that your product, it's really undisputed, our policies have those exclusions. Xerox didn't. You know, they paid because they don't have those exclusions. We do. So their decision isn't binding on us. And as for the product. Excuse me. Excuse me. I'm sorry. Did the district judge discuss at all exclusion E? It appeared to me that the only discussion was F and H. Correct. You're right. The district court did not reach exclusion E. And did not reach anything to do with damages. Can we then consider it anyway? Because the district judge didn't base any of its decision on it or even discuss it. Well, you can do whatever you want, of course. It's a de novo review. So you can reach the issue. But you really don't need to reach the exclusions. Because if you find that there's no proper damage under either prong of the definition, you never even get there. So you don't have to. That's essentially what the district court did. Yes. I mean, the district court essentially said, I find that, you know, you haven't proved it on either prong. I'm stopping there. But just in case, I'm going to address these two exclusions. Wasn't really necessary to the decision. Which is F was the one? What was that one? She said something about that. I'm sorry. She did address that one, didn't she? She addressed the product recall and your product exclusions. That's F and? That's F and. H? That is F and H, correct. She did not reach exclusion E, which is property that has not been physically injured. Okay. So, exactly. I mean, if you find there's no property damage, there's no reason to go to the exclusions. There's no coverage. It's a matter of law. So if there are no further questions, we ask that you affirm the judgment. Thank you. Thank you. Opposing counsel is correct. This is on complete de novo review by this Court, Your Honor. There is no competent evidence in the record of any secondary market usage for this product, period. In answer to your question, Your Honor, the $650,000 premium was for one year. Faulty workmanship, physical injury is always caused by some fault or some faulty workmanship that isn't up to standard. And so the notion that physical injury is not caused by faulty workmanship or is not covered is simply incorrect. And I should submit as well that physical injury is always economic injury because it results in economic damages, as the California courts have held in the Vandenberg case cited in our brief. I'd just like to give you three quotes, if I could, in closing. As New York's appellate division stressed in PepsiCo Company v. Winterthur cited in our brief at page 28, citing all of the cases that we've discussed here, while physical damages are not defined in the policy, we disagree with the insurance company that to prove physical damages, the plaintiff must prove that there has been a distinct, demonstrable alteration of the physical structure of the plaintiff's products by some external force. In other words, that the product has gone from good to bad. It is sufficient under the circumstances of this case involving the unmerchantability of beverage products that the product's function and value have been seriously impaired, such that the product cannot be sold. As the Court went on, neither the fact that the product was not rendered unfit for human consumption nor the fact that its unmerchantability may have gone undetected initially mean that a physical event did not occur for which injury or damage resulted. And I would also again like to quote from the California's court of appeals decision in Watts Industries v. Zurich American Insurance Company, which discusses F&H and also discusses Shade Foods. Quote, the California courts or, excuse me, courts applying California law have not challenged the application in Armstrong v. Shade of the elder court's reasoning to cases involving incorporation of hazardous products. There is no doubt in anybody's mind that this was and is a hazardous product and could not be sold to the consuming public. Finally, I mentioned that some of the other cases in the United States have not been considered as hazardous products. The Federal Insurance Company of America, Judge Fees, Central District, 2005, said, quote, It is clear that in those cases where the failure of the Semtec chip, this was a chip in a computer, caused other components on the motherboard to burn out, i.e., the QE sex FET, the chip caused property damage within the meaning of the policies as it physically injured the servers. And this is the important part. Similarly, the shutdown problem caused property damage because it resulted in loss of use of the servers. So we clearly had loss of use of these products. Thank you very much, Your Honors. Roberts. Thank you. Roberts. Okay. Thank you. We appreciate your arguments very much, very helpful.
judges: Watson, Hug, Paez